**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| SEARS, ROEBUCK AND CO., a New York company; KCD IP, LLC, a Delaware limited liability company, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ROCKHARD LABORATORIES, LLC, a Georgia limited liability company and ROCKHARD LABORATORIES HOLDINGS, LLC, a Georgia limited liability company, )<br><br>Defendants. ) | Case No.  2011-cv-2483<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Sears, Roebuck and Co. and KCD IP, LLC ("Plaintiffs") by and through their undersigned counsel, and for their Complaint against Defendants Rockhard Laboratories, LLC and Rockhard Laboratories Holdings, LLC ("Defendants") state as follows:

## SUMMARY OF NATURE OF ACTION

1.     Plaintiffs bring this Complaint against Defendants seeking relief for Defendants willful and deliberate use of Plaintiffs' trademarks and for Defendants' continued solicitation of consumers and promotion of Defendants' sexual enhancement supplements and sprays and related goods and services in a manner calculated to deceive the consuming public into believing that Defendants' products have a relationship with Plaintiffs and Plaintiffs' goods and services.

Plaintiffs also bring this Complaint seeking relief for Defendants' willful and deliberate dilution of Plaintiff's trademarks and for Defendants' willful and deliberate cybersquatting.

2.      This is an action for Federal Trademark Infringement under Section 43(a) of the Lanham Act (15 U.S.C.. § 1114 et seq.); Federal Trademark Dilution under Section 43(a) of the Lanham Act (15 U.S.C. § 1125 et seq.); Federal False Designation of Origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125 et seq.); Federal Cybersquatting under the Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125 et seq.); State Unfair Competition under the Illinois Uniform Deceptive Trade Practices Act (815 I.L.C.S. § 510 et seq.); common law trademark infringement; common law unfair competition; and common law injury to business reputation.  Plaintiffs seek temporary and permanent injunctive relief, damages, exemplary and punitive damages, attorneys' fees, costs, and any other further relief that this Court may deem equitable and proper.

### THE PARTIES

3.      Plaintiff Sears, Roebuck and Co. ("Sears") is a New York company with its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Plaintiff KCD IP, LLC ("KCD") is a Delaware limited liability company with its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

4.      Defendant Rockhard Laboratories, LLC is a Georgia limited liability company with its principal place of business at 3400 Old Milton Parkway, Bldg. C, Suite 330, Alpharetta, Georgia 30005.  Defendant Rockhard Laboratories Holdings, LLC is a Georgia limited liability company with its principal place of business at 3400 Old Milton Parkway, Bldg. C, Suite 330, Alpharetta, Georgia 30005.

## JURISDICTION AND VENUE

5.      The Court has personal jurisdiction over Defendants as Defendants have regularly and purposefully directed their business activities toward Illinois and its residents.  Defendants have sold goods and/or services to Illinois residents, Defendants have contacts with the state of Illinois, Defendants have transacted business in Illinois and with Illinois residents, Defendants have committed tortious acts in Illinois, and Defendants' websites feature content available to Illinois residents that infringes Plaintiffs' intellectual property.  For example, on Defendants' websites, Defendants' identify certain retail establishments in Illinois and this District which carry Defendants' goods.   On information and belief, Illinois residents have purchased Defendants' goods from Defendants' websites and from retail establishments located in Illinois and this District.  All of Defendants' activities have caused injury to Plaintiffs in Illinois.

6.      This Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

7.      The Court has supplemental subject matter jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367 because the claims are joined with a substantial and related federal claim and form a part of the same case or controversy under Article III of the United States Constitution.

8.      The Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3) because this action is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest or costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and (d) because a substantial portion of the events or omissions giving rise to the claims herein occurred in Illinois and this District.

## FACTUAL BACKGROUND

### Plaintiffs' Famous DIEHARD Marks and Brand

10.     KCD is the owner of the famous DIEHARD Marks and brand for a variety of goods and services.  KCD is affiliated with Sears and the DIEHARD products and services are marketed and sold through Sears and its affiliates.

11.     As one of the oldest broad line retailers in the United States, Plaintiffs offer for sale, sell, market, and distribute some of the most trusted and preferred brands of products and related services throughout the United States, including Illinois.

12.     Plaintiffs have used and registered on the Principal Register a large family of DIEHARD marks, including DIEHARD, DIEHARD GOLD, DIEHARD SILVER, DIEHARD PLATINUM, DIEHARD EXPRESS, DIEHARD DUTY, DIEHARD RACING and other DIEHARD marks ("the DIEHARD Mark(s)").  (*See* Registration Certificates for all of Plaintiffs' valid and subsisting registrations for the DIEHARD Marks from the United States Patent and Trademark Office, attached hereto as **Exhibit 1**.)  A table listing Plaintiffs' valid and subsisting registrations is shown below:

| Mark | Reg. No. | Reg. Date | Goods/Services |
|------|----------|-----------|----------------|
| DIE-HARD | 1,696,168 | June 23, 1992 | Hats |
| DIEHARD | 1,781,544 | July 13, 1993 | Footwear |
| DIEHARD | 2,276,072 | Sep. 7, 1999 | Batteries for motorcycles, tractors, marine equipment, namely boats and battery chargers |
| **DieHard** | 2,628,203 | Oct. 1, 2002 | Clothing, namely, hats and work boots |
| **DieHard** | 2,677,217 | Jan. 21, 2003 | Batteries, namely batteries for motorcycles, tractors, wheel chairs, marine equipment, namely boats, and battery chargers |
| DIEHARD | 2,895,818 | Oct. 19, 2004 | Batteries, namely, batteries for vehicles, motorcycles, tractors wheel chairs, marine equipment, |

4

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | namely, boats; alkaline and electric batteries; and booster cables |
| DIEHARD | 3,355,910 | Dec. 18, 2007 | Batteries, namely, rechargeable batteries, hearing aid batteries, watch and electronics batteries, and camera batteries; battery charger stations |
| DIEHARD | 3,875,643 | Nov. 16, 2010 | Inverters, battery chargers, portable battery chargers, portable battery chargers with jump start cables; battery jump starters; portable power supplies |
| DIEHARD GOLD | 2,881,737 | Sep. 7, 2004 | Batteries |
| DIEHARD EXPRESS | 2,939,673 | Apr. 12, 2005 | Automotive repair and maintenance services |
| DIEHARD DUTY | 3,096,741 | May 23, 2006 | Footwear |
| DIEHARD PLATINUM | 3,412,083 | Apr. 15, 2008 | Automotive batteries |
| DIEHARD PLATINUM | 3,828,624 | Aug. 3, 2010 | Batteries |

A substantial number of these registrations are incontestable.  Plaintiffs also have a number of additional applications pending for additional forms and uses of the DIEHARD Marks.  Plaintiffs are the owners, licensees, and users in interstate commerce of the DIEHARD Marks.

13.    In addition to Plaintiffs' trademark registrations, Plaintiffs have registered several domain names containing the name and mark DIEHARD or variants thereof, including: "diehard.com," "diehard.net," and "diehard.org."  The earliest of these registered domain names, "diehard.com" was registered on March 20, 1997, long prior to Defendants' registration of the domain name "diehardspray.com" in February 2010.

14.    For many years, Plaintiffs' DIEHARD Marks have been a household name in American culture.  Plaintiffs have sold a variety of products and services under their DIEHARD Marks, including vehicle batteries (Class 9), automotive parts (Class 7), automotive repair services (Class 37), clothing (Class 25) and race promoting services (Class 35).  Plaintiffs have spent tens of millions of dollars in extensive and continuous marketing and advertising of their

DIEHARD Marks. Plaintiffs have enjoyed tremendously strong worldwide sales of their goods and services for many years.

15. Plaintiffs have used the DIEHARD Marks on batteries to power general consumer electronics, including "AAA," "AA," "C," "D," and 9-volt alkaline batteries. In the 1990's Plaintiffs expanded their DIEHARD brand to include flashlights, flashlight batteries, rechargeable batteries, gel cel batteries and work boots. Plaintiffs have also used their DIEHARD Marks for batteries to power motorcycles, boats, golf carts, garden tractors, snowmobiles, all-terrain vehicles, personal watercraft, and various mobility equipment for the handicapped. Plaintiffs use the DIEHARD Marks in connection with many of their CRAFTSMAN® power tools, where the DIEHARD Marks are prominently displayed. Plaintiffs also sponsor NASCAR and NHRA, and for nearly 10 years Plaintiffs were the official sponsor of the "DieHard 500" auto race. Plaintiffs also use the DIEHARD Marks in association with electrical products such as battery chargers and inverters. Finally, Plaintiffs have used the DIEHARD Marks on a number of everyday consumer products such as clothing, hats, footwear, portable coolers, pens, key chains, bottle openers, and beverageware.

16. Plaintiffs' family of DIEHARD Marks has become extremely popular and widely sold throughout the United States over the last approximately 40 years. In fact, Plaintiffs' DIEHARD products and services have become so popular that DIEHARD has become a household name.

17. The success of the DIEHARD brand is due not only to the reliability and toughness of Plaintiffs' DIEHARD products, but also to Plaintiffs' careful, creative, and extensive marketing and advertising of their DIEHARD brand. Plaintiffs' "frozen lake" and "jump of faith" commercials are just two examples of their innovative approach to the marketing

and advertising of the DIEHARD brand. Throughout the last 43 years, Plaintiffs' advertising has reached consumers of all ages, types and demographics, resulting in the widespread recognition among the general public of the mark DIEHARD as indicating Plaintiffs as the source of many varied products and services, and as a cultural reference of a well-known iconic brand. Plaintiffs' advertising efforts for the DIEHARD Marks and brand consist of widely disseminated and highly visible outdoor advertisements, billboards, magazine advertisements, internet advertisements, and nationally televised commercials.

18. Plaintiffs also maintain the domain name "diehard.com," wherein consumers may view DIEHARD commercials, learn about DIEHARD products, review information on selection, performance, and maintenance of DIEHARD batteries, select a DIEHARD battery, and learn where to purchase Plaintiffs' DIEHARD products. Plaintiffs' website also features a series of "Torture Labs" commercials.

19. For more than 40 years Plaintiffs have made extensive and continuous use in interstate commerce of the DIEHARD Marks and brand. By virtue of this use, Plaintiffs also possess common law trademark rights in the DIEHARD Marks. Plaintiffs have expended significant time, energy, and money promoting and marketing their business and their services under the DIEHARD Marks. As a result of such extensive sales and advertising, the DIEHARD Marks have become famous in the United States, as well as internationally, and represent extraordinarily valuable goodwill.

**<u>Defendants' Unlawful and Infringing Activities</u>**

20. Without the prior knowledge or approval of Plaintiffs, Defendants advertised, marketed, offered for sale, and sold a sexual enhancement spray using the mark "Die Hard." Defendants used Plaintiffs' DIEHARD Marks in interstate commerce for commercial purposes.

21.     Defendants registered the domain name "diehardspray.com" in February 2010.

22.     Defendant RockHard Laboratories, LLC filed an application to register the mark "DIE HARD LIVE IT. LOVE IT. OWN IT. (with design)" (Serial NO. 77/938897) in the United States on February 18, 2010 ("the Application"). The Application was filed on an intent-to-use basis for "numbing agent for male genitalia." Plaintiffs filed a Notice of Opposition to the Application on August 11, 2010 and RockHard Laboratories, LLC voluntarily abandoned the Application on November 18, 2010.

23.     After Plaintiffs filed their Opposition to the Application, Plaintiffs demanded that Defendants cease and desist from using Plaintiffs' DIEHARD marks and that Defendants change the name of their sexual enhancement spray.

24.     Defendants use Plaintiffs' DIEHARD Marks in interstate commerce on their website "diehardspray.com," on their product packaging, and in advertisements. (*See* Screenshots from Defendants' website, attached hereto as **Exhibit 2**.)

25.     Defendants told Plaintiffs that they would stop using the DIEHARD Marks but have refused to stop using Plaintiffs' DIEHARD Marks. Therefore, Defendants continue to infringe Plaintiffs' DIEHARD Marks with actual notice of Plaintiffs' rights and objections, further demonstrating Defendants' willful and intentional behavior.

26.     Defendants' actions have caused and continue to cause Plaintiffs irreparable harm for which they have no adequate remedy at law.

## COUNT I

### Federal Trademark Infringement
### (15 U.S.C. § 1114 et seq.)

27.     Plaintiffs reallege and incorporate by reference paragraphs 1-26 as if fully set forth herein.

28. This is a claim for infringement of Plaintiffs' DIEHARD Marks.

29. KCD is the owner of all right, title, and interest in and to the DIEHARD Marks, of which the remaining Plaintiffs are licensees and authorized users in interstate commerce of the DIEHARD Marks.

30. Defendants' unauthorized interstate use in commerce of Plaintiffs' federally registered DIEHARD Marks to sell, offer for sale, distribute, and/or advertise their goods and services constitutes a reproduction, copying, and colorable imitation of Plaintiffs' DIEHARD Marks and is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Plaintiffs' goods and services, or as to a connection or affiliation with Plaintiffs, or permission from Plaintiffs, that does not exist, causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

31. Defendants' conduct is likely to cause confusion, mistake, and deception of the purchasing public insofar as purchasers would incorrectly be led to believe that Defendants are affiliated with, related to, sponsored by or connected with Plaintiffs, in violation of 15 U.S.C. § 1114.

32. Despite their actual and constructive knowledge of Plaintiffs' ownership of the DIEHARD Marks and Plaintiffs' significant and continuous prior use of the DIEHARD Marks, Defendants have continued to use Plaintiffs' DIEHARD Marks without Plaintiffs' authorization or consent. Defendants' actions are deliberate and willful and have been performed with the intention of trading upon the valuable goodwill built up by Plaintiffs in their DIEHARD Marks.

33. Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

34. By reason of the foregoing acts, Defendants are liable for trademark infringement under 15 U.S.C. § 1114.

## COUNT II

### Federal Trademark Dilution
### (15 U.S.C. § 1125 (c))

35.     Plaintiffs reallege and incorporate by reference paragraphs 1-34 as if fully set forth herein.

36.     The primary public association of the DIEHARD Marks is with Plaintiffs and Plaintiffs' wide variety of goods and services offered for sale and sold in connection with the DIEHARD Marks.  DIEHARD is an iconic brand that has attained widespread recognition by the American public.  Indeed, Plaintiffs' DIEHARD Marks have been used in such a widespread manner that they are recognized as a "household name."

37.      Plaintiffs' DIEHARD Marks are famous because it is undisputed that Plaintiffs' DIEHARD Mark and brand are "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2).

38.     Plaintiffs' DIEHARD Marks are famous and inherently distinctive, as evidenced by the numerous DIEHARD federal trademark registrations on the Principal Register that are owned and used by Plaintiffs.  Thus, Plaintiffs' DIEHARD Marks are afforded a broad spectrum of protection.

39.     Plaintiffs' DIEHARD Marks, which have been developed over the past 43 years, and which reflect one of the most famous brands in the United States, easily meet the "fame" standard for purposes of the Anti-Dilution statute.

40.     Defendants' use of Plaintiffs' DIEHARD Mark is commercial in nature and is likely to cause dilution of Plaintiffs' famous DIEHARD Mark and brand.  Defendants' use of

Plaintiffs' DIEHARD Mark is likely to tarnish Plaintiffs' valuable business reputation and goodwill and is likely to blur the distinctiveness of the famous and distinctive DIEHARD Marks.

41.     Defendants' use of Plaintiffs' DIEHARD Marks in connection with a "numbing agent for male genitalia," has diminished, blurred, and tarnished, and will likely continue to diminish, blur, and tarnish Plaintiffs' famous DIEHARD Marks.  For example, Defendants' advertisements on their website have shown a partially naked woman laying on top of the word DIEHARD.

42.     Defendants' use of Plaintiffs' DIEHARD Marks is likely to dilute, actually dilutes, and will continue to dilute the distinctive quality of Plaintiffs' famous DIEHARD Marks.

43.     Defendants' acts are intentional and willful.

44.     Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

45.     By reason of the foregoing acts, Defendants are liable for trademark dilution under 15 U.S.C. § 1125 (c).

## COUNT III

### Federal Unfair Competition
### (15 U.S.C. § 1125(a))

46.     Plaintiffs reallege and incorporate by reference paragraphs 1-45 as if fully set forth herein.

47.     Plaintiffs have spent substantial sums of money to promote their goods and services under the DIEHARD Marks.  Plaintiffs have also generated substantial revenue using the DIEHARD Marks.  The DIEHARD Marks are distinctive and have become impressed upon the minds of the trade and public as identifying Plaintiffs' goods and services.  Plaintiffs' DIEHARD Marks also indicate Plaintiffs as the source of origin of the goods and services

provided in association with the DIEHARD Marks. The reputation and goodwill that has been built-up in Plaintiffs' DIEHARD Marks is of great value to Plaintiffs.

48. Defendants' unauthorized interstate use in commerce of Plaintiffs' DIEHARD Marks to promote, advertise, market, and/or sell their goods and services constitutes false designation of origin pursuant to 15 U.S.C. § 1125(a).

49. Defendants' use of Plaintiffs' DIEHARD Marks in connection with Defendants' services constitutes false designation of origin that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, and/or as to the origin, sponsorship, or approval of Defendants and/or Defendants' goods and services by or with Plaintiffs and/or Plaintiffs' goods and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their DIEHARD Marks and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

50. Despite their actual and constructive knowledge of Plaintiffs ownership and prior use of the DIEHARD Marks, Defendants have continued to use Plaintiffs' DIEHARD Marks without Plaintiffs' authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their DIEHARD Marks.

51. Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

52. By reason of the foregoing acts, Defendants are liable for false designation of origin under 15 U.S.C. § 1125(a).

## COUNT IV

**Federal Cybersquatting Under the Anticybersquatting Consumer Protection Act
(15 U.S.C. § 1125(d))**

53.      Plaintiffs reallege and incorporate by reference paragraphs 1-52 as if fully set forth herein.

54.      Defendants' domain name "diehardspray.com" is identical and/or confusingly similar to Plaintiffs' DIEHARD Marks, each of which was distinctive and famous prior to Defendants' registration of the "diehardspray.com" domain name.

55.      Upon information and belief, Defendants adopted the "diehardspray.com" domain name with a bad faith intent to profit from Plaintiffs' DIEHARD Marks.

56.      Defendants' use of the "diehardspray.com" domain name has caused, and is likely to continue to cause, harm to Plaintiffs' good will and reputation.

57.      Defendants' actions are willful, and Plaintiffs have no adequate remedy at law. Plaintiffs therefore seek an Order from the Court transferring the "diehardspray.com" domain name to Plaintiffs.

58.      Defendants' activities as alleged herein constitute a violation of the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

59.      Because of Defendants' willful and intentional actions, Plaintiffs have incurred attorneys' fees and costs.

60.      Because of Defendants' willful and intentional actions, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V

**Violation of the Illinois Deceptive Trade Practices Act-Illinois Unfair Competition
(815 I.L.C.S. § 510 et seq.)**

61.     Plaintiffs reallege and incorporate by reference paragraphs 1-60 as if fully set forth herein.

62.     Defendants' unauthorized, intentional, and willful use of Plaintiffs' DIEHARD Marks to promote, advertise, market, and/or sell their goods and services in Illinois constitutes unfair competition within the meaning of the Illinois Deceptive Trade Practices Act, 815 I.L.C.S. § 510 et seq.

63.     Defendants' use of Plaintiffs' DIEHARD Marks in connection with Defendants' goods and services constitutes unfair competition that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, and/or as to the origin, sponsorship, or approval of Defendants and/or Defendants' goods and services by or with Plaintiffs and/or Plaintiffs' goods and services, in violation of 815 I.L.C.S. § 510 et seq.   Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions.  Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their DIEHARD Marks and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

64.     Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the DIEHARD Marks, Defendants have continued to use Plaintiffs' DIEHARD Marks without Plaintiffs' authorization or consent.  Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their DIEHARD Marks.

65.     Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

66.     By reason of the foregoing acts, Defendants are liable for a violation of the Illinois Deceptive Trade Practices Act, 815 I.L.C.S. § 510 et seq.

67.     Pursuant to the Illinois Uniform Deceptive Trade Practices Act, 815 I.L.C.S. § 510, Plaintiffs are entitled to permanent injunctive relief ordering Defendants to cease this unfair competition.

## COUNT VI

### Common Law Trademark Infringement

68.     Plaintiffs reallege and incorporate by reference paragraphs 1-67 as if fully set forth herein.

69.     Plaintiffs have common law rights in the DIEHARD Marks based on their continuous use of the DIEHARD Marks in Illinois in connection with a variety of goods and services.

70.     Defendants' unauthorized use of Plaintiffs' DIEHARD Marks to promote, advertise, market, and/or sell their goods and services constitutes common law trademark infringement and is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Plaintiffs' goods and services, or as to a connection or affiliation with Plaintiffs, or permission from Plaintiffs, that does not exist, causing irreparable harm to Plaintiffs for which there is not adequate remedy at law.

71.     Despite their actual and constructive knowledge of Plaintiffs ownership and prior use of the DIEHARD Marks, Defendants have continued to use Plaintiffs' DIEHARD Marks without Plaintiffs' authorization or consent.  Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their DIEHARD Marks.

72.     Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

73.     By reason of the foregoing acts, Defendants are liable for common law trademark infringement.

## COUNT VII

### Common Law Unfair Competition

74.     Plaintiffs reallege and incorporate by reference paragraphs 1-73 as if fully set forth herein.

75.     Defendants' unauthorized, intentional, and willful use of Plaintiffs' DIEHARD Marks to promote, advertise, market, and/or sell their goods and services in Illinois constitutes Illinois common law unfair competition.

76.     Defendants' use of Plaintiffs' DIEHARD Marks is likely to cause confusion, mistake, and deception among consumers as to the origin, sponsorship, or approval of Defendants and/or Defendants' good and services by or with Plaintiffs and/or Plaintiffs' goods and services.  Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their DIEHARD Marks and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

77.     Despite their actual and constructive knowledge of Plaintiffs ownership and prior use of the DIEHARD Marks, Defendants have continued to use Plaintiffs' DIEHARD Marks without Plaintiffs' authorization or consent.  Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their DIEHARD Marks.

78.     Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

79. By reason of the foregoing acts, Defendants are liable for Illinois common law unfair competition.

## COUNT VIII

### Common Law Injury to Business Reputation

80. Plaintiffs reallege and incorporates by reference paragraphs 1-79 as if fully set forth herein.

81. Defendants' use of Plaintiffs' DIEHARD Marks injures and creates a likelihood of injury to Plaintiffs' business reputation because persons encountering Defendants and their goods and services will believe that Defendants are affiliated or related to or have the approval of Plaintiffs and the goods and services that are promoted by Plaintiffs, and any adverse reaction by the public to Defendants, the quality of Defendants' goods and services, and the nature of their business will injure the business reputation of Plaintiffs and the goodwill that it enjoys in connection with Plaintiffs' DIEHARD Marks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a) Judgment be entered for Plaintiffs on all of their respective claims.

(b) A finding that Defendants' acts constitute a violation of the claims alleged in Count I through Count VIII.

(c) That Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and all others in privity or acting in concert with them be preliminarily and permanently enjoined from:

17

(i)     Using in substance or effect Plaintiffs' DIEHARD Marks, or any other mark or name that is a colorable imitation of, or is confusingly similar to those marks or any other mark or designation of Plaintiffs;

(ii)    Imitating, copying, duplicating, circulating, selling, or otherwise disposing of any product or material which bears any copy or colorable imitation of Plaintiffs' DIEHARD Marks;

(iii)   Manufacturing, producing, distributing, circulating, selling, or otherwise disposing of any product or material which bears any copy or colorable imitation of Plaintiffs' DIEHARD Marks;

(iv)    Doing any other act or thing likely to confuse, mislead, or deceive others into believing that Defendants and/or their website and goods and services are affiliated with, connected to, sponsored by, or approved or permitted by Plaintiffs;

(v)     Diluting or tarnishing Plaintiffs' famous DIEHARD Marks;

(vi)    Using false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs or as to the origin, sponsorship, or approval of Defendants or Defendants' goods and services;

(vii)   Otherwise infringing Plaintiffs' DIEHARD Marks;

(viii)  Otherwise infringing Plaintiffs' common law DIEHARD Marks;

(ix)    Unfairly competing with Plaintiffs or otherwise injuring their business reputation in any manner; and

(x)     Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (i) through (ix).

(d)     An accounting be directed to determine any and all of Defendants' profits or Plaintiffs' losses resulting from Defendants' activities and that any such profits or losses be paid over to Plaintiffs and increased as the Court finds to be just under the circumstances of this case.

(e)     This Court declare this action to be "exceptional" within the meaning of 15 U.S.C. § 1117, and order Defendants to reimburse Plaintiffs their full costs and reasonable attorneys' fees incurred in this action as provided for thereunder and award Plaintiffs treble damages.

(f)     That Defendants be ordered to pay Plaintiffs their full costs and reasonable attorneys' fees pursuant to 815 I.L.C.S. §§ 505 et seq. and 510 et seq.

(g)     That Defendants be directed to deliver up for destruction all printed and electronically stored materials in their possession or under their control bearing all or part of Plaintiffs' DIEHARD Marks and all plates, molds, matrices, and other means of making or duplicating the same.

(h)     That Defendants be required to pay over to Plaintiffs an award of treble Plaintiffs' actual damages and Defendants' profits, together with profits resulting from sales by Defendants relating to their trademark infringement, trademark dilution, cybersquatting, and unfair competition, pursuant to 15 U.S.C. § 1117 (a) and (b).

(i)     That Defendants be required to pay to Plaintiffs an amount of money for Plaintiffs to effectively engage in a corrective advertising campaign to undo the damage to their business caused by Defendants.

(j)     That Defendants be required to file with the Court and serve on Plaintiffs within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

(k)     That Defendants be Ordered to turn over the domain name "diehardspray.com."

(l)     That Defendants pay over to Plaintiffs an award of statutory damages in the amount of not less than $1,000 up to $100,000, as the Court considers just.

(m)     That Plaintiffs be awarded such other and further relief as this Court may deem equitable and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  April 13, 2011

*/s/James J. Lukas, Jr.*

John F. Gibbons
Kevin J. O'Shea
James J. Lukas, Jr.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400

*Attorneys for Plaintiffs*